# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Guanghua CHEN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-09481 |
| | ) |
| The Partnerships and Unincorporated | ) |
| Associations Identified On Schedule A, | ) |
| | ) |
| Defendants. | ) |

**Complaint**

**NOW COMES** Guanghua CHEN ("Plaintiff"), by and through Plaintiff's undesigned counsel, hereby brings the present case against The Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and alleges as follows:

**INTRODUCTION**

1.     This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's commercial reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed counterfeit products, including baby carriages, using counterfeit versions of Plaintiff's federally registered trademarks ("Counterfeit Products").

2.     Defendants create fully interactive, commercial Internet stores operating under one or more Seller Aliases identified in **Schedule A,** attached hereto (collectively, "Defendant Online Stores"), that are intentionally designed to appear to be selling genuine Plaintiff products, while actually selling Counterfeit Products to unknowing consumers.

3. The Defendants' activities, such as occuring in the same retail space using shared or similar email address, identical or slightly modified (*e.g.*, carefully blurred) product photographs, and design elements and similarities of the counterfeit products offered for sale, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences.

4. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal both their true identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademarks ("Plaintiff Marks"), as listed in **Exhibit 1**, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet.

5. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of Plaintiff's valuable trademarks as a result of Defendants' actions and accordingly seeks injunctive and monetary relief.

**JURISDICTION AND VENUE**

6. This Court has original subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1051, et seq., and 28 U.S.C. §§ 1331, 1338(a)-(b).

7. This Court has jurisdiction over the claims herein arising under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because each Defendant directly targets its business activities toward consumers in the United States, including Illinois and this Judicial

District. Defendants reach out to do business with residents of Illinois and this Judicial District by operating one or more commercial, fully interactive Defendant Online Stores through which residents of Illinois and this Judicial District can purchase products being offered and sold under counterfeit versions of Plaintiff's federally registered trademark. Each Defendant has targeted sales from residents of Illinois and this Judicial District by operating Defendant Online Store(s) that accept(s) payment in U.S. dollars and offers shipping to addresses within Illinois and this Judicial District for products offered with counterfeit versions of Plaintiff's federally registered trademarks. Each Defendant has committed and is committing tortious acts in Illinois and this Judicial District, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## THE PLAINTIFF

9. Plaintiff specializes in the creation, manufacture, marketing, and sale of consumer products including in association with Plaintiff's internationally recognizable and federally registered trademarks (collectively, "Plaintiff's Products" or "Plaintiff Products").

10. Plaintiff is the owner and licensor of all of Plaintiff's Products that are available at, *inter alia*, the website identified in **Exhibit 2**.

11. Plaintiff has invested substantial resources, time, money, and commercial efforts in order to establish the goodwill of Plaintiff's Products and the Plaintiff Marks. The success of Plaintiff's business enterprise is dependent and a result of Plaintiff's effort to market, promote, and advertise online via e-commerce.

12. The success of Plaintiff's Products additionally stems from sales to consumers and interest that Plaintiff's consumers have generated.

13. As a result of the efforts of Plaintiff, the quality of Plaintiff's Products, the promotional efforts for Plaintiff's products and designs, the members of the public have become familiar with Plaintiff's Products and Plaintiff Marks and associate Plaintiff's Products and the Plaintiff Mark exclusively with Plaintiff.

14. Plaintiff has made efforts to protect Plaintiff's interests in and to the Plaintiff Marks. Plaintiff is the only business and/or individual authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Plaintiff Mark.

## THE DEFENDANTS

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in foreign jurisdictions. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## PLAINTIFF'S BUSINESS

17. Since 2021, Plaintiff has sold a variety of products related to bicycles, mopeds, strollers, baby carriages hair dryers, and lamps, bearing the mark identified in **Exhibit 1**.

18. Plaintiff has spent considerable resources growing and protecting Plaintiff's brand and the Plaintiff Marks.

19. Plaintiff is the owner of all rights, title, and interest in and to the Plaintiff Marks.

20. Plaintiff uses the Plaintiff Marks in connection with the marketing of Plaintiff's Products and has registered the Plaintiff Marks with the United States Patent and Trademark Office on the Principal Register, as set forth in **Exhibit 1**.

21. The U.S. registrations for the Plaintiff Marks are valid, subsisting, and in full force and effect. The registrations for the Plaintiff Marks constitute *prima facie* evidence of the Plaintiff Marks' validity and of Plaintiff's exclusive right to use the Plaintiff Marks pursuant to 15 U.S.C. § 1057(b).

22. Plaintiff has built substantial goodwill in and to the Plaintiff Marks which are a well- known and valuable asset of Plaintiff.

23. Plaintiff has continuously used the Plaintiff Marks in U.S. interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Plaintiff Products since 2021.

24. Genuine Plaintiff Products have become very popular, driven by Plaintiff's elevated quality standards and innovative designs. Genuine Plaintiff Products are instantly recognizable among the consuming public and the Plaintiff Marks identify, in the United States and around the world, high quality bicycles, mopeds, strollers, baby carriages hair dryers, and lamps products offered by Plaintiff.

25. Genuine Plaintiff Products have been promoted and sold at, *inter alia*, Plaintiff's e-commerce storefront identified in **Exhibit 2**. Plaintiff's e-commerce website features proprietary content, images, and designs exclusive to Plaintiff.

26. As a result of Plaintiff's long-standing use of the Plaintiff Mark in association with Plaintiff's high-quality products, extensive sales, and significant marketing activities, the Plaintiff Marks have achieved widespread acceptance and recognition among the consuming public and throughout U.S. interstate commerce.

27. The Plaintiff Marks are exclusive to Plaintiff and appears clearly with all Plaintiff Products. Plaintiff has expended substantial time, money, and other resources to develop, advertise, promote, and protect the Plaintiff Marks. Accordingly, products bearing the Plaintiff Marks are widely recognized and exclusively associated by the consuming public and the industry as being high-quality key chain accessories sourced from Plaintiff.

28. The Plaintiff Marks are distinctive when used in association with the sale of Plaintiff's bicycles, mopeds, strollers, baby carriages hair dryers, and lamps products, signifying to the purchaser that the products come exclusively from Plaintiff and are made to Plaintiff's material specifications.

## THE DEFENDANTS' UNLAWFUL CONDUCT

29. The success of Plaintiff's brand has resulted in its counterfeiting. Plaintiff has identified numerous online marketplace accounts and marketplace listings on platforms such as Amazon, including the Defendant Internet Stores, which are offering for sale, selling, and importing Counterfeit Products to consumers in this judicial district and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion.

According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the 2021 study), Internet websites like the Defendant Internet Stores are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

30. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and Amazon Pay. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

31. Plaintiff has neither licensed nor authorized Defendants to use Plaintiff's Trademarks, and none of the Defendants are authorized retailers of Plaintiff's genuine products.

32. Upon information and belief, Defendants deceive unknowing consumers by using Plaintiff's Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines looking for websites relevant to consumer searches for Plaintiff's products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for Plaintiff's genuine products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results

after others are shut down. As such, Plaintiff seeks to disable Defendant Internet Stores through which their Counterfeit Products are sold.

33.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation. Third party service providers like those used by Defendants do not adequately subject  new sellers to verification and confirmation of their identities, allowing infringers to "routinely use  false or inaccurate names and addresses when registering with these e-commerce platforms."[1]

34.     Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

35.     Even though Defendants operate under multiple Seller Aliases, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendants' websites have identical layouts, even though different Seller Aliases were used to register their respective online marketplace accounts. In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by a common source and that Defendants are interrelated. For example, Defendants use shared or similar contact email address. In addition, the Defendant Internet Stores also include other notable common features, including use of the same online marketplace account registration patterns, unique shopping cart platforms, similar payment and check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables,

---

[1] Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

domain redirection, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

36.     In addition to operating under multiple Seller Alias, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, when counterfeiters like Defendants receive notice of a lawsuit they will often register new online marketplace accounts under new aliases and move website hosting to rogue servers located outside the United States. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2021 U.S. Customs and Border Protection study indicated that the Internet has fueled explosive growth in the number of small packages of counterfeit goods shipped through the mail and express carriers. This growth closely correlates to the growth of the e-commerce industry which now make up 10% of all retail transactions.

37.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon accounts behind layers of payment gateways so that they can continue to operate in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their Amazon, Alibaba, and Walmart accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Amazon, Alibaba, and Walmart transaction logs from prior similar cases indicate that offshore counterfeiters regularly move funds from U.S.-based Amazon, Alibaba, and Walmart accounts to China-based bank accounts outside the jurisdiction of this Court.

38.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as

sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

39. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

40. Defendants' use of Plaintiff's Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

41. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 40.

42. Plaintiff's trademark infringement claims against Defendants are based on Defendants ' unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiff Marks in connection with the advertising, distribution, offering for sale, and sale of infringing goods.

43. The Plaintiff Marks are distinctive marks, and consumers have come to expect superior quality from products advertised, distributed, offered, or sold under the Plaintiff Marks.

44.     Defendants have advertised, distributed, offered to sell, sold, and are still advertising, distributing, offering to sell, and selling products using counterfeit reproductions of the Plaintiff Marks without Plaintiff's permission.

45.     Plaintiff is the exclusive owner of the Plaintiff Marks. Plaintiff's registrations for the Plaintiff Marks are in full force and effect.

46.     Upon information and belief, Defendants are aware and have knowledge of Plaintiff's rights in the Plaintiff Marks and are willfully infringing the Plaintiff Marks and intentionally using counterfeit reproductions thereof.

47.     Defendants' willful, intentional, and unauthorized use of the Plaintiff Marks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

48.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. § 1114.

49.     Plaintiff has no adequate remedy at law and will suffer irreparable harm to Plaintiff's  reputation and goodwill of Plaintiff's well-known Plaintiff Marks if Defendants' actions are not  enjoined.

50.     Defendants' wrongful advertisement, offering to sell, and sale of Counterfeit Products have directly and proximately caused injuries and damage to Plaintiff.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

51.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs  1 through 40.

11

52. Defendants' advertising, distribution, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

53. By using the Plaintiff Marks in association with the advertising, distribution, offering for sale, and sale of the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the true origin and sponsorship of the Counterfeit Products.

54. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the willful use of counterfeit marks and is a willful violation of 15 U.S.C. § 1125.

55. Plaintiff has no adequate remedy at law and will suffer irreparable harm to Plaintiff's reputation and goodwill of Plaintiff's well-known Plaintiff Marks if Defendants' actions are not enjoined.

## COUNT III

## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (815 ILCS § 510/1, et seq.)

56. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 40.

57. Defendants have engaged in acts which violate Illinois law including, without limitation: passing off their Counterfeit Products as those of Plaintiff; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to the affiliation, connection, or association

with genuine Plaintiff Products; representing that their products have Plaintiff's approval when they do not; and engaging in other conduct as described herein which creates a likelihood of confusion or misunderstanding among the public.

58. Defendants' foregoing acts constitute willful violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

59. Plaintiff has no adequate remedy at law and will suffer irreparable harm to Plaintiff's reputation and goodwill of Plaintiff's well-known Plaintiff Marks if Defendants' actions are not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Plaintiff Marks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with the Plaintiff Marks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff Product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Plaintiff Marks;

    **c.** committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    **d.** further infringing the Plaintiff Mark and damaging Plaintiff's goodwill; and

    **e.** manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Plaintiff Marks, or any reproductions, counterfeit copies, or colorable imitations thereof;

**2)** Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Walmart, Amazon, eBay sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing, and Yahoo (collectively, "Third Party Providers") shall:

    **a.** disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Plaintiff Marks;

    **b.** disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Plaintiff Marks; and

    **c.** take all steps necessary to prevent links to the Defendant Online Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online Stores from any search index;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Plaintiff Marks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Plaintiff Marks;

5) That Plaintiff be awarded Plaintiff's reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and prope.


Dated: August 11, 2025                                    Respectfully submitted,

                                                          /s/ *Qin Zhuang*
                                                          Qin Zhuang
                                                          Building 2, Unit 1, Room 507
                                                          5 Chaoyang Road, Chaoyang
                                                          Beijing, PRC 100022
                                                          0086-155-1009-0593
                                                          zhuangqin@yuntinglaw.com
                                                          **Counsel for Plaintiff**


15

## CERTIFICATE OF SERVICE

On August 11, 2025, I filed the foregoing document with the clerk of Court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF System, which will send notification of said filing to all counsel of record.

/s/ *Qin Zhuang*

Qin Zhuang